UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELMER CANDY CORPORATION | CIVIL ACTION |
| VERSUS | NO: 20-2192 |
| KUEHNE & NAGEL, INC., ET AL. | SECTION: "A" (3) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 54)** filed by Kuehne + Nagel, Inc. ("KN"). The plaintiff, Elmer Candy Corp., opposes the motion. The motion, submitted for consideration on March 2, 2022, is before the Court on the briefs without oral argument.

This case arises out of the ruin of a shipment of 1,640 cases of Elmer's chocolate Christmas candy ("the Candy Cargo") leaving from the plaintiff's facility in Ponchatoula, Louisiana. The shipment was headed to Elmer's customer, TC Marketing, located in Houston, Texas. Elmer contracted with the movant, KN, to arrange for the transport of the Candy Cargo. KN then contracted with Total Quality Logistics, Inc. (described as a "freight broker") to transport the Candy Cargo via Super Trucking, Inc.'s refrigerated truck. The Candy Cargo required an air-conditioned temperature in the transport vessel of 55 degrees Fahrenheit (12.7 degrees Celsius), and Elmer gave explicit instructions to KN on this point. The Bill of Lading includes the notation "KEEP TEMP 55*," which would seem to indicate that Elmer communicated its needs to KN, who then communicated them to Total Quality Logistics. (Rec. Doc. 54-3, Exhibit B Bates

ELMER_2650).

Whether the container truck arrived already "frozen," or whether the temperature dropped in transit due to some malfunction or error is not clear. What is clear is that when the refrigerator truck carrying the Candy Cargo arrived in Houston, the temperature inside the vehicle was found to be 0.4 degrees Fahrenheit (-18 degrees Celsius), and alack, the Candy Cargo a complete ruin. The unhappy customer in Houston refused the shipment and cancelled the transaction with Elmer. Elmer contends that it sustained damages beyond just the value of the Candy Cargo itself.[1]

Elmer filed a claim with KN for the damaged Candy Cargo. This lawsuit followed. Elmer has sued KN and Super Trucking; Total Quality Logistics, Inc. has not been named as a defendant.

Elmer sued KN under the Carmack Amendment, 49 U.S.C. § 14706, alleging that it acted as a "freight forwarder" for purposes of that law; similarly, Elmer sued Super Trucking alleging that it acted as a "motor carrier." In the alternative, Elmer alleges that KN breached the parties' contract by failing to use reasonable care in selecting Super Trucking to transport the Candy Cargo.

This case is scheduled for a bench trial on April 18, 2022, where the Court will sit

---

[1] KN has pointed out numerous times that the temperature inside the refrigerator truck was below 55 degrees when it arrived at Elmer's facility and yet Elmer's personnel proceeded to load the Candy Cargo anyway without confirming the temperature setting. KN refers the Court to Elmer's response to Interrogatory No. 2, in which Elmer does state that the container arrived "frozen," but Elmer contends that it allowed the container to thaw out before any loading took place. (Rec. Doc. 54-2, Exhibit A at 6). The email chain that KN cites to regarding the temperature check does not imply that Elmer loaded the container "anyway" notwithstanding that it was frozen. (*Id.* Exhibit B Bates ELMER_2532).

as the finder-of-fact.

KN now moves for judgment as a matter of law and this is not KN's first attempt to do so. On June 1, 2021, the Court denied a very similar motion for summary judgment filed by KN, explaining that judgment as a matter of law should be denied because "K+N's role in the shipping transaction at issue and its liability, if any, will be determined at the nonjury trial of this matter." (Rec. Doc. 41, Order).

Elmer urges the Court to deny KN's current motion as untimely without reaching the merits because when the case was continued by the Court due to a trial conflict last June, the Court expressly ordered that "[n]o other deadlines are being extended absent just cause." (Rec. Doc. 43, Minute Entry 6/3/21).

When this matter did not settle following a principals' conference held on August 18, 2021 in the aftermath of the trial continuance, the Court directed that a scheduling conference take place "for the purpose of selecting a new trial date." (Rec. Doc. 49, Minute Entry 8/18/21). Unfortunately, an entirely new scheduling order was entered providing all new pretrial deadlines including a dispositive motion submission date of March 2, 2022. (Rec. Doc. 51, Scheduling Order). The Court was not aware that this had occurred until delving into Elmer's timeliness challenge for the instant motion for summary judgment. Under the new scheduling order KN's motion is timely. And while KN makes a good faith argument as to why its motion should be deemed timely, its argument cannot carry the day. The extension of deadlines occurred inadvertently and was contrary to what the Court ordered.

A determinative question of fact and law in this case is whether KN satisfies the

Page | 3

definition of a "freight forwarder" for purposes of the Carmack Amendment. The burden of proof is on Elmer to establish this part of its case with competent evidence. The Court has already determined in conjunction with KN's prior motion for summary judgment that this issue will be determined at trial and not on summary judgment. Moreover, KN's position seems to be that it did act as a freight forwarder, (Rec. Doc. 54-1, Memorandum in Support at 3, 4), just not a freight forwarder for purposes of the Carmack Amendment. The Court declines to split this legal hair on summary judgment.

If Elmer proves its Carmack case, then the Court will address whether KN effectuated a contractual limitation of liability as to damages. The Court does not find KN's arguments regarding special damages to be convincing. The issue at this juncture is not the sufficiency of Elmer's factual allegations but rather what it can prove at trial.[2]

That said, if Elmer fails to prove its Carmack case, the Court does tend to agree with KN that Elmer does not have evidence (that the Court has seen anyway) that KN failed to exercise reasonable care when it hired Super Trucking as the carrier.

In sum, there are many potential outcomes for this case. Elmer may fail to prove that KN was a Carmack freight forwarder. Even if Elmer proves that KN was a Carmack freight forwarder, KN may successfully establish that Elmer's own act (loading the frozen truck as KN argues) either caused or contributed to the damaged Candy Cargo; or KN may prove that the contractual limitation of liability is enforceable. And Elmer may or may not prove that its special damages were foreseeable. But Elmer desires its day

---

[2] The *Starmaker Publishing Corp. v. Acme Fast Freight, Inc.*, 615 F. Supp. 787 (S.D.N.Y. 1985), decision discussed by KN dealt with a motion for judgment on the pleadings, not with a motion for summary judgment.

in Court so the Court looks forward to seeing all parties and counsel at the trial in April.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 54)** filed by Kuehne + Nagel, Inc. is **DENIED**.

March 8, 2022

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE